# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

UNITED STATES,
    *Plaintiff*,

v.

NORMAN PETERS,
    *Defendant.*

No. 3:18-cr-188 (VAB)

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Norman Peters ("Defendant") requests a modification of his sentence, and asks the Court to reduce his term of imprisonment to time-served and order his immediate release from the custody of the Bureau of Prisons. Mot., ECF No. 146 at 1 (Apr. 29, 2020); *see also* Supp. Mem., ECF No. 146-1 (Apr. 29, 2020); Exs., ECF Nos. 148–51 (Apr. 29, 2020).

The Government takes the position "that the court lacks the authority to address the instant motion given the defendant's failure to exhaust administrative remedies within the Bureau of Prisons." Resp., ECF No. 152 (Apr. 30, 2020) ("Gov't Opp'n").

For the following reasons, Mr. Peters's motion is **GRANTED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2019, a jury found Mr. Peters guilty of possession with intent to distribute cocaine (count one) and the use of a telephone to facilitate a drug trafficking felony (count two). Jury Verdict, ECF No. 90 (Feb. 21, 2019).

On September 10, 2019, the Court sentenced Mr. Peters to two eighteen-month terms of imprisonment, to be served concurrently; an effective three-year term of supervised release; and a mandatory assessment of $100.00 on each count, for a total of $200.00. Judgment, ECF No. 138 (Sept. 13, 2019).

Mr. Peters began his term of incarceration on or about April 5, 2019, when he self-surrendered to the U.S. Marshals. Supp. Mem. at 2.

On March 10, 2020, the Defendant was transferred to Schuyllkill FCI in Minersville, Pennsylvania, where he remains today. *Id.* He claims to have been transferred to various facilities, which has prevented him from beginning the process of applying to a halfway house. *Id.* His transfer to Schuylkill FCI occurred "55 days from his discharge date, preventing his request [for a halfway house] from being submitted and processed." *Id.* at 3.

On April 29, 2020, Mr. Peters filed an emergency motion for compassionate release. Mot.

On April 30, 2020, the Government filed a response, noting Mr. Peters had not exhausted his administrative remedies. Gov't Opp'n.

On April 30, 2020, Mr. Peters filed a reply "to respond to the Government's position on the issue of exhaustion." Reply, ECF No. 154 (Apr. 30, 2020).

## II. STANDARD OF REVIEW

As of December 21, 2018, a court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has

exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). The Court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* The Court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a Court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn.

Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

The Commentary to U.S.S.G. § 1B1.13 identifies "four categories of criteria for compassionate release: 'Medical Conditions of the Defendant,' 'Age of the Defendant,' 'Family Circumstances,' and 'Other Reasons.'" *Rivernider*, 2020 WL 597393, at *2 (quoting U.S.S.G. § 1B1.13, Commentary (1)(A)–(D)). With regard to the "other reasons" category, "'extraordinary and compelling reasons exist' when, [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the defendant's medical conditions, age, or family circumstances. *Id.* at *3 (quoting U.S.S.G. § 1B1.13, Commentary (1)(D)).

In any event, "[t]he defendant has the burden to show he is entitled to a sentence reduction," *Ebbers*, 2020 WL 91399, at *4 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)), and "[d]istrict courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction," *see United States v. Tagliaferri*, No. 13 CR. 115 (RA), 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019) (quoting *United States v. Jefferson*, 662 F. App'x 36, 38 (2d Cir. 2016)).

Mr. Peters seeks to modify his sentence and "requests that the Court reduce his sentence to time served and release him to home confinement[.]" Supp. Mem. at 1. Mr. Peters emphasizes the growing coronavirus ("COVID-19") pandemic, his "immunocompromised status and

documented health issues," and "the BOP's recent denial of his request for either home confinement or compassionate release." *Id.* At age thirty-nine, he "suffers from a number of medical conditions that render him immunocompromised and at higher risk for developing complications from COVID-19, which could lead to death." *Id.* at 20.

Mr. Peters argues that Section 3553(a) factors weigh in favor of release. He contends that "the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." *Id.* at 21–22. Furthermore, Mr. Peters "has already completed the majority of his sentence and is due to be released in less than four weeks[,]" and a one month-reduction in his sentence with a three-year term of supervised release "reflect[s] the serious[ness] of the offense and provide[s] just punishment." *Id.* 22–23. "He has been deprived of the opportunity for programming and treatment due to his incarceration primarily at detention centers." *Id.* at 23. According to Mr. Peters, he would also be unlikely to receive any further treatment because his remaining sentence is so short, and programming has stopped in an effort to slow the spread of COVID-19. *Id.*

Lastly, Mr. Peters argues that this motion is properly before the Court because he "has already exhausted his administrative remedies by submitting an administrative request to the BOP on April 17, 2020, which was formally denied by the warden[.]" *Id.* at 24. Waiting thirty more days, in his opinion, "would be futile because, given the policy reasons cited by the BOP, there is no chance whatsoever that the BOP will release him . . . before 30 days have elapsed." *Id.* at 26.

The Government responds that "the Court lacks authority to act on the defendant's motion for compassionate release" because Mr. Peters "has not exhausted all of his administrative appeals," nor have "30-day[s] [] elapsed since the filing of his request[.]" Gov't

Opp'n at 2. The Government also notes that Schuyllkill FCI has "not had any inmates or staff who have tested positive" for COVID-19 and that "risk to [Mr. Peters] is speculative at this time." *Id.* at 5.

Mr. Peters responds that because the exhaustion requirement in section 3582(c) is not jurisdictional, the Court "has the power to decide the motion, even though it has not been 30 days from the date that Mr. Peters first submitted his request on April 17, 2020." Reply at 1.

The Court agrees.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions, in combination with the increased risks of COVID-19 in prisons, constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *U.S. v. Norris*, No. 17-cr-106-1 (SRU) (Apr. 16, 2020) (order granting reduction of sentence under the First Step Act because of defendant's chronic respiratory disease); *U.S. v. Smith*, No. 12 CR 133 (JFK), 2020 WL 1849748, at *1, *4 (S.D.N.Y. Apr. 13, 2020) ("[Mr.] Smith's age and medical conditions—such as his asthma—place him at a higher risk for developing serious complications should he be exposed to COVID-19 while at the MDC or a halfway house, and would substantially diminish his ability to provide self-care within those environments." (citing U.S.S.G. § 1B1.13 comment n.1(A)(ii))); *U.S. v. Zukerman*, 2020 WL 1659880, at *4–*5 (S.D.N.Y. Apr. 3, 2020) (waiving exhaustion requirements because of defendant's advanced age and compromised health and finding his age and compromised health warranted compassionate release).

Mr. Peters is thirty-nine years old and suffers from underlying medical conditions which leave him immunocompromised. Supp. Mem. at 20. He has submitted health records under seal confirming past treatment and diagnoses. *See* ECF Nos. 148–51. After reviewing Mr. Peters's

health records, the Court finds that his underlying medical conditions put him in a high-risk category.

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Two letters were sent by Counsel to BOP on Mr. Peters's behalf, one dated March 31, 2020 and the other April 6, 2020. *Id*. at 3; Mot.,Exs. A & B, at 13–18. Thirty days have not passed on either motion, from either date.

Numerous courts within the Second Circuit, however, have waived the exhaustion requirement during the COVID-19 pandemic. *See, e.g.*, *Zuckerman*, 2020 WL 1659880 t *2–*4; *U.S. v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *U.S. v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2–*3 (S.D.N.Y. Apr. 1, 2020).

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). "[T]he requirement of completing the administrative process may be waived 'if one of the recognized exceptions to exhaustion applies.'" *McCarthy*, 2020 WL 1698732, at *3 (quoting *Perez*, 2020 WL 1546422, at *2). These exceptions include: (1) where exhaustion would be futile, including where undue delay due to exhaustion may result in "catastrophic health consequences," (2) where "the administrative process would be incapable of granting adequate relief;" and (3) where "pursuing agency review would subject plaintiffs to undue prejudice." *Washington*, 925 F.3d at 118–20.

District courts have found that all three exceptions apply in cases where incarcerated individuals, due to their age and underlying health issues, seek compassionate release in light of

the spread of COVID-19. *See, e.g.*, *McCarthy*, 2020 WL 1698732, at *4 ("Even a few weeks' delay carries the risk of catastrophic health consequences for [Mr.] McCarthy. . . . [and he] could be unduly prejudiced by such delay. Clearly, given his conditions, [Mr.] McCarthy is at great risk of succumbing to COVID-19."); *Perez*, 2020 WL 1546422, at *3 (waiving exhaustion requirement because delay could result in undue prejudice and render exhaustion futile and inadequate).

The Court agrees and waives the exhaustion requirement for Mr. Peters, as undue delay in his release could result in catastrophic health consequences for him in light of his underlying health conditions and the COVID-19 pandemic.

Accordingly, immediate release is appropriate.

IV.   **CONCLUSIONS**

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3682(c)(1)(A). Mr. Peter's term of imprisonment is reduced to **TIME SERVED**. It is ordered that Mr. Peters be released immediately to begin his three-year term of supervised release.

All other conditions of supervised release from his September 10, 2019 judgment shall remain in effect.

Upon returning to his home, Mr. Peters shall self-quarantine for fourteen (14) days. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of May, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge